**Frank SIMON and Sol Geldzahler**
**Plaintiffs,**

**v.**

**Charles WEAVER; The regents of the University of Southern California at Berkeley; William Nelson; Digital Mosaic Systems Ltd., (U.K.); Ari Friedman; Electro Optical Systems; Rich Lapierre; Douglas Steinfeld; Frank Werblin, Phd.; Terra OPS; Carl Steinbrenner; Digital Mosaic Systems, (MA); Steven Pike; Argon Electronics; John Doe 1 through 100; and Jane Doe 1 through 100; Defendants.**

No. 03 Civ. 6685(RO).

United States District Court, S.D. New York.

July 23, 2004.

The Furman Law Firm, Alireza Dilma-ghani, Antoinette M. Wooten, for Plaintiffs.

Gerber & Samson, LLC, Steven Gerber, Patti Scott, Wayne, NJ, for Defendants.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiffs Frank Simon and Sol Geldzahler are New York City businessmen each of whom made unfortunate investments in Electro Optical Systems Corporation ("EOSC"), allegedly under the control of one Charles Weaver. Simon's investment of $80,000 was in 1998 and Geldzahler's $30,000 in 1999. They allege that Weaver, as part of a "scheme to defraud," induced them to make these investments and had no intention of paying plaintiffs a return on their investments. Compl. ¶ 33. In 2000, Weaver allegedly told plaintiffs that he was creating a new corporation, Digital Mosaic Systems ("DMS"), and was transferring plaintiffs' investments in EOSC to stock in DMS. DMS was allegedly created to market fingerprint technology developed by defendant Dr. Frank Werblin, a professor of Neurobiology at the University of California at Berkeley. At the time, however, Weaver had not yet obtained the license to market this fingerprint technology. Rather, Weaver was still negotiating with Werblin for the license, which defendant Regents of the University of Southern California ("Regents")[1] ultimately had the power to grant. The complaint then alleges that "as part of the ongoing conspiracy, combination and agreement," Weaver and Werblin created a corporation named TERRAOPS, Compl. ¶ 38, and that

Weaver and Werblin then "set out to defraud investors by covering themselves with the cloak and mantle of the University of Southern [sic] California at Berkeley in order to lend credibility to the scheme to defraud." Id.

However, the complaint alleges that Werblin soon thereafter learned Weaver had a criminal past—major securities fraud resulting in a federal conviction. Upon discovering this, Werblin decided to disassociate himself from Weaver, and, apparently before any investors were defrauded, "Werblin exited the picture and closed down TERRAOPS." Compl. ¶ 40. It is conceded that Werblin also quickly informed the Regents of Weaver's criminal past. See Def. Mem. Support at 9.

The complaint next alleges that, as a result of Werblin's disclosure, the Regents then "knew or should have known ... that one of its employees and assigns was involved in a criminal conspiracy to defraud." Compl. ¶ 41. The Regents, "in the face of overwhelming evidence that a fraud was occurring, ignored the obvious facts" and in November 2000[2] granted Weaver a license to Werblin's fingerprint technology. Id. Plaintiffs claim that by granting the license to Weaver, the Regents instantly "became an active co-conspirator with Weaver in the conspiracy, combination and agreement to defraud" because the Regents "knew or should have known ... that the license was granted to a known criminal who was utilizing the license in a scheme to defraud." Id.

The complaint charges that, through their association with Weaver, defendants Werblin, the Regents and over 200 other

---

**1.** In their brief, defendants note that the Complaint incorrectly refers to the Regents of the University of Southern California. The defendant is properly called the Regents of the University of California, of which the University of California at Berkeley is part. The Court hereinafter refers to them simply as the "Regents."

**2.** Whatever else, even assuming the conclusory allegation of ignorance, it was long after plaintiffs had been induced to invest with Weaver.

named and unnamed individuals and corporations are liable for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18. U.S.C. § 1961,[3] aiding and abetting, conversion, fraud, and securities violations under the Securities and Exchange Act of 1934, §§ 20(a), 10(b), and Rule 10b–5. Plaintiffs seek damages in the amount of $130,000,[4] plus interest and punitive damages in the amount of $40,000,000. Defendants Regents and Werblin move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6).

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). On the other hand, dismissal is proper "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■■■ Plaintiffs' first claim for relief is a RICO claim. To assert a civil RICO claim under § 1964(c), a plaintiff must allege the elements of § 1962: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Morin v. Trupin*, 711 F.Supp. 97, 105 (S.D.N.Y. 1989) quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983). And when bringing a civil RICO action under § 1964(c), a plaintiff, in addition to alleging

a violation of § 1962, must also allege that the plaintiff was "injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c). The plaintiffs here have failed to plead an injury as a result of any actions on the part of either the Regents or Werblin, the moving defendants. While the complaint essentially alleges that in 1998 and 1999 the plaintiffs were induced into investing in Weaver's EOSC and Weaver never intended to or did pay back plaintiffs' investments, these events, which allegedly caused plaintiffs' injury, all occurred before the Regents or Werblin had any contact with either Weaver or DMS. The record would permit the conjecture that the plaintiffs brought these claims against the Regents and Werblin solely in search of a deep pocket, the complaint making clear that Weaver, and not the defendants named here, was the one who allegedly induced plaintiffs to invest in EOSC as part of his scheme to defraud. See Compl. ¶¶ 34–36. It was Weaver, not Werblin or the Regents, who was "at all times relevant hereto the person of authority charged with oversight responsibility for the audit and review of the financial operations of DMS" and "caused substantial financial losses to plaintiffs ... through the gross mismanagement" of DMS. Compl. ¶ 8.

Nowhere in the complaint do plaintiffs show the required connection between their injuries and any actions of Werblin or the Regents. *See Morin*, 711 F.Supp. at 106. Absent such allegations, the RICO claim against Werblin and the Regents is dismissed.

■■■ Plaintiffs' second claim is aiding and abetting the aforementioned RICO vi-

---

3. While § 1961 is the definitions section of RICO, in viewing the allegations in the light most favorably to the plaintiffs, I will assume that plaintiffs are making a § 1964(c) claim which is the civil RICO section.

4. The ad damnum clause, Compl. ¶ 72, at 28, uses the figure of $130,000, although the earlier recitation of facts only totaled $120,000. Compl. ¶ 35, at 16.

olations. In order to properly allege a claim for aiding and abetting, plaintiffs must show: "(1) the existence of a ... violation by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 139 (S.D.N.Y. 1991), *quoting Samuel M. Feinberg Testamentary Trust v. Carter,* 652 F.Supp. 1066, 1082 (S.D.N.Y.1987). The knowledge element in an aiding and abetting claim requires both actual and specific knowledge of the primary party's violations. *See Browning Ave. Realty,* 774 F.Supp. at 143. Plaintiffs have failed to allege that Regents or Werblin had knowledge of the primary party's (Weaver) alleged RICO violations. Again, Weaver's alleged RICO violations as they pertain to plaintiffs occurred before Werblin or Regents had any contact with Weaver. Werblin and Regents could not have had any knowledge of the RICO violations. Accordingly, the aiding and abetting claim is dismissed.

▆ Plaintiffs' third claim alleges fraud. A fraud claim requires an allegation of reliance. *See Center Cadillac, Inc. v. Bank Leumi Trust Company of New York,* 808 F.Supp. 213 (S.D.N.Y.1992). Also, there must be an allegation of injury as a result of defendants' alleged fraud. *See Morin,* 711 F.Supp. at 103. But Werblin and the Regents did not come into the picture until 2000, after plaintiffs had made their investments. Since plaintiffs fail to allege either reliance on any representations by defendants or any injury due to defendants alleged fraudulent activities, the fraud claims must also be dismissed.

▆ Plaintiffs' fourth claim is conversion. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Insurance Company of America v. Housing Authority of the City of El Paso, Texas,* 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995). To withstand a motion to dismiss in a conversion claim, a plaintiff must allege "(1) title to the property converted, or his right to possession of that property; (2) an act of conversion by the defendant; and (3) damages caused by the conversion." *Brass v. American Film Technologies, Inc.,* 780 F.Supp. 1001, 1003 (S.D.N.Y.1991). Plaintiffs fail to allege the second element—an act of conversion by the defendant—with regard to either Werblin or the Regents. The only hint of a conversion allegation within the complaint is when Weaver told plaintiffs he had created the new company, DMS. The complaint alleges that "Weaver announced that all the 'LOANS' made by the plaintiffs to EOSC Ponzi scheme were being converted to stock in DMS." Compl. ¶ 36. There is no mention of Werblin or the Regents in this allegation. Thus, the complaint fails to allege any conversion by Werblin or the Regents. Accordingly, plaintiffs claim of conversion with regard to Werblin or the Regents must be dismissed.

▆ The plaintiffs' final claims are for securities fraud under § 10(b), Rule 10b–5 and § 20(a) of the Securities and Exchange Act. To state a claim under § 10(b) and Rule 10b–5, a plaintiff must plead (1) a misrepresentation or omission of a material fact in connection with the purchase or sale of a security; (2) scienter on the part of the defendant; (3) the plaintiff's reliance on the misrepresentation; and (4) damage to the plaintiff resulting from the misrepresentation. *See In re Scholastic Corp. Sec. Litig.,* 252 F.3d 63, 69 (2d Cir.2001). Plaintiffs' claim of securities fraud must fail because, as stated

above, plaintiffs do not allege the third and fourth elements, that they relied on any representations—let alone that there were any—of either Werblin or the Regents or that these caused damage. Accordingly, the § 10(b) and Rule 10b–5 claims are dismissed.

Plaintiffs claim under § 20(a) of the Securities and Exchange Act—the "controlling persons" section of the Act—must also fail.[5] Plaintiffs are claiming securities fraud with regard to their investments in EOSC and it is also possible—though plaintiffs never make clear—that they are claiming securities fraud against DMS. However, in a § 20(a) claim, plaintiffs must allege that defendants were controlling parties of the entity in violation of the securities claims. Plaintiffs never allege that Werblin or the Regents were ever controlling parties of either EOSC or DMS. The complaint does not allege any contact between EOSC and either Werblin or the Regents. And the complaint merely alleges that Werblin was involved in negotiations with DMS for a brief period before severing all ties and, according to the complaint, the Regents merely granted a license to DMS. At the same time, the complaint explicitly states that Weaver was at all times the controlling party of both EOSC and DMS. *See* Compl. ¶¶ 8,14. The § 20(a) claim is dismissed.

Accordingly, defendants' motion is granted and plaintiffs' vacuous complaint as to defendants Regents and Werblin is dismissed. Given this, I need not address defendants' motion to dismiss under 12(b)(1) for lack of subject matter jurisdiction under defendants' theory of Eleventh Amendment immunity for the Regents,

nor need I address defendants' motion to dismiss under 12(b)(2).

So ordered.

---

**5.** § 20(a) reads as follows: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."