**CONTINENTAL REALTY CORPORATION,
Plaintiff,**

v.

**J.C. PENNEY COMPANY, INC., J.C. Penney Properties, Inc., JCP Realty Inc. and Philip L. O'Connell, Defendants.**

**No. 89 CIV. 2945 (LBS).**

United States District Court,
S.D. New York.

Feb. 5, 1990.

Eaton & Van Winkle, New York City (Jonathan A. Chase, of counsel), for plaintiff.

John R. Camillo and Mary G. Tacher, J.C. Penney Co., Inc., Dallas, Tex., and Weil, Gotshal & Manges, New York City (Kevin P. Hughes, of counsel), for defendants.

## OPINION

SAND, District Judge.

The Defendants move this Court for an order dismissing the Amended Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b). Counts VIII and IX of the Amended Complaint allege violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and this Court's jurisdiction is based upon RICO and principles of pendent jurisdiction. We grant the Defendants motion to dismiss Counts VIII and IX of the Amended Complaint and therefore also dismiss this case for lack of subject matter jurisdiction.

### Background

This dispute arises out of a real estate transaction gone sour. By a Letter of Intent dated August 27, 1987, JCP Realty, Inc. ("JCP Realty"), on behalf of J.C. Penney Company, Inc. ("JCP") and J.C. Penney Properties, Inc. ("JCP Properties"), agreed to sell to Continental Realty Corporation ("Continental") their interests in three shopping center properties located in Florida. Philip O'Connell, an officer of JCP Realty, subsequently represented to Continental in a letter dated September 24, 1987 that the agreed terms would be recommended to JCP's Capital Appropriations Committee and that the formal written contract was being prepared. Those steps, however, were never taken because the Defendants received a higher bid for the same properties from Home Depot, Inc. ("Home Depot").

Rather than completing the sale to Home Depot, the Defendants offered on February 11, 1988 to sell the Florida properties to Continental if Continental would also agree to purchase two additional properties in Georgia that Home Depot had agreed to purchase and if Continental would match Home Depot's bid of $22 million for the five properties. Continental agreed and offered $22.5 million for the Florida properties, the Georgia properties and another small parcel of undeveloped land in Georgia. However, even though the Defendants and Continental executed an Agreement of Purchase and Sale on June 3, 1988, the parties did not close their deal because a dispute arose as to the documents that would be needed to convey marketable title.

Continental alleges in its Amended Complaint that the Defendants had no intention of selling the Florida properties to Continental (¶ 26), that O'Connell falsely represented to Continental the competing bid from Home Depot to induce Continental to raise its bid and purchase additional property (¶¶ 32–34) and that the Defendants concealed information necessary to establish marketable title in order to "re-direct the contract to defendants' former employee and/or colleague, William Harris of Home Depot" (¶¶ 48–49). The Amended Complaint seeks damages for breach of contract, fraud, tortious interference with contract, unjust enrichment and violations of § 1962(c) and (d) of RICO.

### RICO Claims

We agree with the Defendants that the Amended Complaint does not allege a pattern of racketeering activity as required by *H.J. Inc. v. Northwestern Bell Tel. Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), *United States v. Kaplan*, 886 F.2d 536 (2d Cir.1989), *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (en banc), *cert. denied*, —— U.S. ——, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989), and *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.1989) (en banc), *vacated for further consideration*, —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), *upheld* by order of Sept. 15, 1989. "To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc.*, 109 S.Ct. at 2901 (emphasis in original). Because the allegations in the Amended Complaint do not indicate sufficient continuity or threat of continuity, the RICO claims are dismissed.

In *H.J. Inc.*, the Supreme Court recently examined RICO's pattern requirement and elaborated on its definition:

Congress had a more natural and commonsense approach to RICO's pattern element in mind, intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity.

*H.J. Inc.*, 109 S.Ct. at 2899. "Continuity" is "centrally a temporal concept" that can "refer[ ] either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 2902 (citations omitted). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* Alternatively, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* While its opinion offers these broad guidelines, the Supreme Court declined to provide a firm definition of the continuity requirement, noting that the proof required will depend on the specific facts of each case. *Id.*

The Second Circuit in *Kaplan*, reaffirming its earlier decision in *Indelicato*, held that continuity or threat of continuity can be shown by either related predicate acts extending over a long time period or by reference to external facts that indicate that the Defendant's activities are not "isolated" or "sporadic." *Kaplan*, 886 F.2d at 542–43. Those external facts can be the nature of the RICO enterprise, such as an entity whose business is racketeering, or other facts that indicate that the racketeering acts will continue. *Id.* While Plaintiffs are no longer required to allege "an ongoing scheme having no demonstrable ending point, . . . [w]hat is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic." *Beauford*, 865 F.2d at 1391.

Other Circuits have identified several factors for assessing threat of continuity. *See Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988) ("(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries"); *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir.1987) ("the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity"); *see also Airlines Reporting Corporation v. AERO Voyagers, Inc.*, 721 F.Supp. 579 (S.D.N.Y.1989) (collecting other cases).

In this case, Continental alleges that the Defendants committed several acts of mail and wire fraud over a period of more than one year in furtherance of a scheme to defraud them. Amended Complaint ¶ 65(a), 65(b). Continental also alleges that the

Defendants are likely to continue their fraudulent conduct:

> (c) The aforesaid fraudulent acts of defendants threaten to continue, in that (i) the aforementioned personal relationships continue to promote and advance the same by providing defendants with a "competing bidder" in a variety of real estate transactions, which bidder has no *bona fide* interest in actually purchasing the property in question, but only acts to fraudulently inflate the price of the property being offered by defendants, (ii) upon information and belief, defendants have continued and continue to negotiate with third parties, including Home Depot, regarding the sale of the Property, (iii) the Property has not been sold to Home Depot, notwithstanding Sellers' failure to close sale of the Property with plaintiff upon terms represented to be "identical" to those allegedly offered by Home Depot, and (iv) defendants' fraudulent actions in subverting the Second Agreement [Agreement of Purchase and Sale dated June 3, 1988] by concealing, failing to disclose and withholding information relating to title to the Property were and are of a kind and nature readily susceptible to continuing repetition.

Amended Complaint, ¶ 65(c). Assuming that these allegations are true, as we must on a motion to dismiss, they fail to satisfy the continuity prong of RICO's pattern requirement. Defendant's actions were narrowly directed toward a single allegedly fraudulent goal. The scheme involved one victim (Continental), one group of perpetrators (the Defendants) and a limited goal (fraud and breach of contract in one real estate transaction). If we treat the facts pleaded as alleging a closed-ended scheme, the Defendants fraudulent acts occurred over too short a time period to constitute the "long-term criminal conduct" required by *H.J. Inc. H.J. Inc.*, 109 S.Ct. at 2902 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement"); *see Airlines Reporting Corp.*, 721 F.Supp. at 585 (thirteen months are insufficient).

While Continental's allegations on their face also support an open-ended scheme, nothing in the Defendants' actions suggest "a distinct threat of long-term racketeering activity, either implicit or explicit." *H.J. Inc.*, 109 S.Ct. at 2902. Continental fails to provide any factual support for its contention that the Defendant's fraudulent activity will continue in the future. None of its four allegations in paragraph 65(c) of the Amended Complaint provide any factual basis for a finding of continuity or threat of continuity. Other than Continental's bare allegation, there is no reason to believe that Home Depot will continue to provide dummy bids for the Defendants in other real estate transactions. The fact that the Defendants continue to seek a buyer for the same property only provides the opportunity for future fraud, but does not provide any evidence for its likelihood. The failure to sell these properties to Home Depot only provides evidence of the past fraud and again opportunity for future fraud. Continental's final allegation also provides no factual support for believing that the Defendants will continue to enter into real estate contracts with the intent of concealing of failing to deliver marketable title to those properties.

Continental does not allege that Defendants previously engaged in similar acts, and allegations of future opportunities to commit fraud are not sufficient to support a finding of continuity or threat of continuity. Continental's conclusory allegations fail to satisfy Fed.R.Civ.P. 9(b)'s requirement that averments of fraud be stated with particularity and therefore cannot be relied upon to demonstrate a continuing pattern of fraudulent acts. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir.1989) ("If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim"). While any threat of continuity is by its nature hypothetical, to infer a threat of repeated fraud from a single alleged scheme would in effect render the pattern requirement meaningless. Continental offers no more than its unsupported belief that the Defendants will continue to com-

mit fraud. There is no evidence that would permit this Court to conclude that the Defendants committed anything other than isolated or sporadic criminal acts.

### Conclusion

In its once-amended complaint, Continental has failed to plead facts indicating that the Defendants' conduct was sufficiently continuous, or presents a sufficient threat of continuity, to establish a "pattern of racketeering activity." We grant the Defendants' motion to dismiss Claims VIII and IX of the Amended Complaint. We also dismiss this case for lack of subject matter jurisdiction over the remaining pendent state claims.

SO ORDERED.