Malvina D'ORANGE, Plaintiff,

v.

Charles M. FEELY, Ralph Crudo, and Crudo & Crudo, P.C., Defendants.

No. 94 Civ. 4157 (CBM).

United States District Court, S.D. New York.

Feb. 22, 1995.

William Dunnegan, New York City, for plaintiff.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### I. BACKGROUND

The underlying cause of action in this case arises from the handling of estate funds of which Plaintiff is the sole beneficiary.[1] Plaintiff Malvina D'Orange is a senior citizen who resides in Queens, New York. (¶ 4.)[2] The estate involved is that of Plaintiff's late sister, Clarette Otalera. (¶ 4.) Defendant Charles M. Feely is the executor of this estate. (¶ 5.) Defendants Ralph Crudo and Crudo & Crudo, P.C. (hereinafter referred to collectively as the "Crudo Defendants") were counsel to the estate during probate proceedings. (¶ 6.)

Defendant Feely drafted a will for Clarette Otalera in which Feely was appointed executor to the estate. (¶ 8.) Feely caused this will to be executed on or about May 9, 1989. (¶ 8.) Simultaneously, Otalera executed a power of attorney to Feely. (¶ 8.)

At about the same time as the execution of these documents, Otalera provided to Feely approximately $ 60,000 in cash or property to hold in trust and to use on her behalf. (¶ 9.) From the time of the establishment of this trust until Otalera died on November 24, 1989, Feely misappropriated approximately $ 43,000 in trust funds for his own purposes. (¶ 10.)

Plaintiff D'Orange was the sole beneficiary of Otalera's estate and stood to inherit approximately $ 255,000. (¶ 11.) Defendant Feely persuaded D'Orange to forgo a lump sum distribution of these funds and instead

---

1. For purposes of these motions to dismiss, the well-pleaded allegations of the Amended Complaint are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1848–1849, 23 L.Ed.2d 404 (1969); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeene de Banque v. La Republica de Venezuela,* 700 F.Supp. 114, 122 (S.D.N.Y.1988) (citation omitted).

2. References to relevant paragraphs in the Complaint are cited to as "(¶ ___.)"

allow Feely to provide her with monthly installment payments of $ 3,000. (¶ 12.) Moreover, from the time of Otalera's death, Feely appropriated for his own benefit approximately $ 79,000 that belonged to the estate. (¶ 14.)

In or before early 1993, Feely created or caused to be created financial journals and accountings that set forth false claims for clerical and legal services in order to cover up his misappropriation of the estate funds. (¶¶ 16–18.) On May 27, 1993, and October 1, 1993, the Crudo Defendants separately forwarded to Plaintiff's counsel the two allegedly fraudulent "fiduciary accountings" that Feely had prepared. (¶¶ 18, 32; Mot. Dismiss Compl. Exs. F, H.)

Plaintiff's federal law causes of action arise under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). Based on the two mailings identified above, Plaintiff charges the Crudo Defendants with both substantive RICO violations and conspiracy to violate RICO. *See* 18 U.S.C. § 1962(b)–(d). Plaintiff also asserts a pendant state law claim for breach of fiduciary duty against these Defendants.

The Crudo Defendants have filed a motion to dismiss the Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. The Defendants assert four grounds for dismissing Plaintiff's RICO claims: (1) Defendants' acts in forwarding Feely's accountings were the legitimate acts of attorneys on behalf of a client in connection with pending litigation and therefore cannot constitute predicate acts; (2) Plaintiff has failed to satisfy the "pattern" requirement under RICO; (3) Plaintiff has failed to plead fraud with requisite particularity; and (4) the estate in this case does not qualify as an "enterprise." Defendants challenge Plaintiff's state law claim on both substantive and jurisdictional grounds. As discussed below, Defendants are correct that Plaintiff has failed to state a RICO claim against them. Therefore, the court lacks supplemental jurisdiction over Plaintiff's state law claim and the Complaint against the Crudo Defendants must be dismissed in its entirety.

## II. The Standard For Dismissal Under Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985); *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 927 (S.D.N.Y.1989). Therefore, on a motion to dismiss, all factual allegations of the complaint must be accepted as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–2233, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991), and all reasonable inferences must be made in plaintiffs' favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Meilke v. Constellation Bancorp,* No. 90–3915, 1992 WL 47342, at * 1 (S.D.N.Y. Mar. 4, 1992). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d at 1067 (citation omitted).

## III. Plaintiff's Effort to Treat the Motion as One for Summary Judgement.

Plaintiff charges the Crudo Defendants with only two predicate acts. Specifically, the Complaint charges that the Defendants forwarded to D'Orange's counsel two allegedly fraudulent accountings prepared by Feely. The Crudo Defendants assert that these accountings were sent in connection with D'Orange's proceeding against Feely in the Surrogate's Court. Further, the Defendants note that their role in this matter was limited to preparing transmittal letters which they sent to D'Orange's counsel along with each of the accountings. While the Complaint only mentions the accountings, Defendants assert that it incorporates the transmittal letters by reference. While a court evaluating a motion to dismiss under Rule 12(b)(6) can consider documents so incorporated, *Kramer v. Time Warner Inc.,* 937

F.2d 767, 773 (2d Cir.1991), it is not obvious that Defendants can satisfy this standard.

■ Defendants also ask the court to take judicial notice of the Surrogate's Court proceedings in connection with which the accountings were provided. Since this is only a request to have the court acknowledge "the fact of such litigation" rather than the truth of any matters asserted therein, Defendants are on solid ground in making this request. *Id.* at 774.

■ Plaintiff takes the view that Defendants have gone beyond the four corners of the complaint, and, therefore, plaintiff concludes that she can do the same. Disregarding the fact that, under Rule 12(b), it is the court rather than the parties that is empowered to convert a motion to dismiss into a motion for summary judgement, the evidence upon which D'Orange seeks to rely is insufficient to overcome Defendants' arguments. Moreover, even when a 12(b)(6) motion is treated as one for summary judgement, the same standard for dismissal applies. *Soper v. Simmons Int'l, Ltd.,* 632 F.Supp. 244, 248 (S.D.N.Y.1986) (Sand, J.) Therefore, even assuming for the sake of argument that Plaintiff is allowed to rely on material extraneous to the Complaint, it is still the Defendants who prevail.

## IV. Plaintiff Has Failed to State a RICO Cause of Action Against the Crudo Defendants.

To establish a cause of action under RICO, a plaintiff must allege seven distinct elements:

(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.[3]

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

The Crudo Defendants' first challenge concerns the requirement that Plaintiff plead two or more predicate acts. The Complaint charges only that the Defendants sent to D'Orange's counsel two accountings prepared by Feely, along with transmittal letters prepared by Defendants. In her motion papers, Plaintiff identifies a third letter the Defendants sent her counsel shortly after the second letter identified in the Complaint, but this letter deals with the same disputed accountings. Plaintiff contends that each of these mailings constitutes a separate act of mail fraud.

■ Defendants argue that their actions in sending these documents cannot be considered predicate acts because they constitute legitimate conduct of attorneys acting on behalf of a client in the course of pending litigation. This statement of the law is correct. In *Morin v. Trupin,* 711 F.Supp. 97, 101–02 (S.D.N.Y.1989) (Sweet, J.), the complaint charged the attorney-defendants with protracted and intimate involvement in an allegedly fraudulent real estate scheme. Analyzing a motion to dismiss counts based on RICO and common law fraud, the court considered whether a letter sent by the attorney-defendants to the plaintiffs demanding payment on notes which the defendants allegedly knew to be unenforceable could constitute a RICO predicate act of mail fraud. In holding that it could not, the court explained the policy behind the rule shielding "legitimate acts of attorneys on behalf of clients:"

Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation.... Subjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation.

*Id.* at 105 (quoting *Spiegel v. Continental Illinois Nat'l Bank,* 609 F.Supp. 1083, 1089 (N.D.Ill.1985), *aff'd,* 790 F.2d 638 (7th Cir.),

---

**3.** Additionally, Plaintiff must allege that she was "injured in [her] business or property by reason of as violation of Section 1962." 18 U.S.C. § 1964(c). However, Defendants do not challenge this aspect of the Complaint.

*cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

■ Plaintiff's response on this issue is to set out the history of the Crudo Defendants' involvement with Defendant Feely and the estate. Plaintiff points to testimony from Feely to the effect that Feely had worked closely with the Crudo Defendants over an extended period of time and that the latter had received copies of Feely's bank statements for the estate. However, even if this testimony raises questions about how much the Crudo Defendants should have known about Feely's accounting practices, it is not sufficient to take this case beyond the ambit of the rule Judge Sweet articulated in *Morin.* Thus, Plaintiff has failed to establish any predicate acts by the Crudo Defendants.

■ Defendants' second argument is that Plaintiff has failed to satisfy the RICO "pattern" requirement. According to the Supreme Court, to establish a "pattern" of racketeering, a plaintiff must show predicate acts that, first, are related to each other, and, second, "constitute a threat of[ ] *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (emphasis in original). Explaining the second requirement further, the Court noted that " '[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. *See also United States v. Kaplan,* 886 F.2d 536, 542–43 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990); *Beauford v. Helmsley,* 865 F.2d 1386, 1391 (2d Cir.) (en banc), *vacated and remanded for further consideration in light of* H.J., Inc., 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *original decision adhered to,* 893 F.2d 1433 (2d Cir.), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). While specifically declining to define a precise rule, the *H.J.* Court stated that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* 492 U.S. at 242, 109 S.Ct. at 2902.

Courts in the Second Circuit have endeavored to define a minimum range of time needed to show close-ended continuity. In *Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993), the court stated that "[t]hough there is no bright line test for determining precisely what period of time is 'substantial' for purposes of finding the continuity necessary to establish a RICO pattern, . . . . [p]eriods of 19 or 20 months, however, have been held sufficient. . . ." In *Continental Realty Corp. v. J.C. Penney Co.,* 729 F.Supp. 1452, 1454–55 (S.D.N.Y.1990), the court held that a period of over one year was insufficient to demonstrate close-ended continuity. *See also In re American Express Co. Shareholder Litig.,* 840 F.Supp. 260, 265–66 (S.D.N.Y.1993) (holding period of slightly under one year insufficient), *aff'd,* 39 F.3d 395 (2d Cir.1994). Moreover, courts in this Circuit have held that in measuring the period of time in question "[c]onduct with only a tenuous relationship to the RICO predicate acts" should be disregarded. *Id.* at 264. *See also United State v. Biaggi,* 909 F.2d 662, 686–87 (2d Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991).

These courts have also delineated a list of factors that are helpful in assessing the demonstrated risk of continuity, including the number of predicate acts, the length of time over which these acts were committed, the similarity of these acts, the number of alleged perpetrators, the number of victims, the existence of separate criminal schemes, and the occurrence of distinct injuries. *See Continental Realty Corp.,* 729 F.Supp. at 1454 (quoting *Jones v. Lamp,* 845 F.2d 755, 757 (7th Cir.1988) and *Barticheck v. Fidelity Union Bank/First Nat'l State,* 832 F.2d 36, 39 (3d Cir.1987)); *In re American Express,* 840 F.Supp. at 265–66.

■ Plaintiff attempts to argue that the Crudo Defendants engaged in racketeering activity over a three year period from sometime in 1990 through October 13, 1993, the date of the third letter identified in Plaintiff's response memorandum. However, all that Plaintiff knows of the Defendants' activities before the May 27, 1993 letter is that Feely claims to have met regularly with the Defen-

dants beginning in 1990. D'Orange offers only the barest of speculation that there was anything untoward about these earlier contacts. Thus, the Defendants' pre–1993 activities are too tenuously related to the mailings of Feely's accountings to be considered part of a pattern under RICO. This leaves Plaintiff with only a five-month period over which the alleged predicate acts occurred.

Regarding the other factors that bear on the threat of continuity, D'Orange has identified only three similar alleged predicate acts committed by a single defendant, Ralph Crudo, against a single victim, D'Orange, as part of a single criminal scheme that resulted in a single injury. Therefore, because Plaintiff cannot establish a threat of continuity, Plaintiff has failed to demonstrate a pattern of racketeering activity.

Defendants' third challenge to the Complaint regards whether Plaintiff has pled fraud with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure. "RICO claims based on mail [or] wire fraud must be pled with particularity under Rule 9(b). . . ." *Center Cadillac v. Bank Leumi Trust Co.*, 808 F.Supp. 213, 228 (S.D.N.Y. 1992) (Motley, J.). *See also Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (en banc); *Morin v. Trupin*, 711 F.Supp. 97, 111 (S.D.N.Y.1989); *Giuliano v. Everything Yogurt, Inc.*, 819 F.Supp. 240, 244 (E.D.N.Y. 1993). *Cf. United States v. Barta*, 635 F.2d 999, 1005 n. 14 (2d Cir.1980) (establishing a cause of action for mail fraud requires a showing of "specific intent to defraud"), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).

Rule 9(b) states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). This pleading requirement is designed to: (1) provide defendants with fair notice of plaintiffs' claim, to enable preparation of a defense, (2) protect defendants from harm to their reputation or goodwill, and (3) reduce the number of strike suits. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir.1987). "Strike suits in this area . . . permit plaintiffs with groundless claims to abuse liberal federal discovery provisions, with the right to do so representing 'in terrorem' increments in the settlement values of the alleged claims." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740–41, 95 S.Ct. 1917, 1927–28, 44 L.Ed.2d 539 (1975)).

To satisfy Rule 9(b), a "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respects in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas*, 886 F.2d at 11. At the same time, Rule 9(b)'s requirement of particularity must be harmonized with the flexibility in pleading permitted under Rule 8(a) of the Federal Rules of Civil Procedure, "which requires only a 'short and plain statement' of the claims for relief." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990) (quoting Fed.R.Civ.P. 8(a)). In applying Rule 9(b), a court should employ the same type of scrutiny as it would under Rule 12(b)(6). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993).

In *Ouaknine*, the Second Circuit explained that "[t]o pass muster under rule 9(b), . . . . [a]lthough scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent. . . . Allegations of scienter are not subjected to the more exacting consideration applied to the other components of fraud. They are sufficient where . . . the allegations lie peculiarly within the opposing parties' knowledge and are accompanied by information that raises a strong inference of fraud." 897 F.2d at 79–81 (cita-

tions omitted). Scienter can be pleaded by alleging "facts showing a motive for committing fraud and a clear opportunity for doing so[, or . . . ] by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Beck,* 820 F.2d at 50. *See also Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989). Finally, where the complaint charges multiple defendants with fraud, it "should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987).

Arguably, Plaintiff has failed to satisfy even the basic requirement to identify the content of the allegedly fraudulent statements. The Crudo Defendants' transmittal letters simply purported that the Defendants were providing D'Orange's counsel with Feely's accounting information. (Mot. Dismiss Compl. Exs. F, H.) It is not entirely obvious that this constitutes misrepresentation by the Crudo Defendants even if Feely himself created false accountings.

■ However, even if one assumes for the sake of argument that the accountings constitute adopted statements of the Crudo Defendants, Plaintiff cannot establish the required strong inference of fraudulent intent. The only allegation Plaintiff makes in her Complaint is that "[t]he intent of Crudo and Crudo & Crudo, P.C. to defraud can be inferred from their personal financial need to coverup [sic] Feely's misappropriation of funds from the Estate and/or Otalera." (¶ 32.) Yet, the Complaint nowhere offers any facts from which one could find that the Crudo Defendants had such a financial need. In her response memorandum, Plaintiff reasons that because the Crudo Defendants had been in regular contact with Feely, had met with the estate's accountant, and had possession of copies of Feely's bank statements, the Defendants should have recognized that Feely was engaged in a fraudulent course of conduct. Yet, this argument is just as consistent with the conclusion that the Crudo Defendants were simply negligent as it is with the inference of fraudulent intent. Thus, Plaintiff has failed to plead RICO predicate acts with sufficient particularity under Rule 9(b).

■ Plaintiff's pleading of a RICO conspiracy involving the Crudo Defendants is subject only to the more liberal pleading standards of Rule 8(a) rather than the strictures of Rule 9(b). *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990). However, even under these standards, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, in the very least, must allege specifically such an agreement." *Id.* at 25. Plaintiff's only pertinent allegation in her complaint is a general one to the effect that the Crudo Defendants conspired with Feely. The only relevant evidence plaintiff notes in her response memorandum is to the effect that the Defendants met with Feely as early as 1990 and that Defendants had possession of records that should have alerted them to Feely's alleged misdeeds. This offers no basis for the conclusion that the Defendants conspired with Feely. Thus, Plaintiff's RICO civil conspiracy claim is inadequate even under Rule 8(a).

Defendants' final argument for dismissal of plaintiff's RICO claims is that the Complaint does not establish the existence of a RICO enterprise. According to the Supreme Court, an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct . . . . [, and it] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). *See also Procter & Gamble Co. v. Big Apple Indus. Buildings, Inc.,* 879 F.2d 10, 15 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990). Moreover, such an enterprise "must have 'an existence beyond that which is merely to commit each of the acts charged a predicate racketeering offenses.'" *Zola v. Gordon,* 685 F.Supp. 354, 373 (S.D.N.Y.1988).

■ Defendants offer two bases for the conclusion that D'Orange has failed to plead

this element. First, Defendants assert that Plaintiff has not shown an association between themselves and the estate beyond the alleged pattern of racketeering activity. However, reading Plaintiff's Complaint and moving papers generously as the court must, this argument fails. Plaintiff makes sufficient allegations to support the conclusion that there was and still is an ongoing association between the Crudo Defendants and the estate in the person of its executor, Feely. Thus, this aspect of the Complaint is sufficient. *Cf. Gunther v. Dinger,* 547 F.Supp. 25, 27 (S.D.N.Y.1982) (noting there is no *per se* reason why an estate cannot be a RICO enterprise).

■ Defendants' other contention is that the Complaint is devoid of any allegations that the Crudo Defendants were associated with the estate for the purpose of engaging in the alleged predicate acts. This argument succeeds for the same reason as does Defendants' above argument regarding D'Orange's pleading of mail fraud under Rule 9(b). In other words, having failed to plead adequate allegations of the Crudo Defendants' intent to commit mail fraud, Plaintiff has thereby failed to plead that these Defendants' associated with Feely and the estate for the purpose of perpetrating the alleged fraudulent scheme. Indeed, at least one court in the Second Circuit has held that Rule 9(b) requires a Plaintiff to plead the enterprise element of a fraud-based RICO complaint with specificity. *See Plount v. American Home Assurance Co.,* 668 F.Supp. 204, 207 (S.D.N.Y.1987) (Sweet, J.). *But see Executive Photo, Inc. v. Norrell,* 756 F.Supp. 798, 801–02 (S.D.N.Y.1991) (Leisure, J.).

### V. The Court Lacks Subject Matter Jurisdiction over Plaintiff's State Law Claims.

■ In addition to her RICO claims, Plaintiff also asserts a state law claim against the Crudo Defendants for breach of fiduciary duty. Defendants offer two bases for finding this claim substantively inadequate. First, Defendants assert that since they had no attorney-client relationship with D'Orange, she cannot maintain a breach of fiduciary duty claim against them as attorneys. Second, Defendants contend that Plaintiff's state law pleadings are inadequate under Rule 9(b).

However, it is not necessary for the court to reach the merits of these arguments. The only basis the court has for subject matter jurisdiction over Plaintiff's state law claim is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." Because Defendants present several adequate bases for dismissing Plaintiff's RICO claims, there is no reason for the court to continue to exercise supplemental jurisdiction over the claim for breach of fiduciary duty.

### VI. Defendants' Request for Rule 11 Sanctions.

■ Defendants ask the court to impose sanctions on Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure. As a procedural matter, Rule 11(c)(1)(A) requires that motions for sanctions be made separately from other motions. Thus, Defendants' request is not properly before the court.

■ Nevertheless, if Defendants were to make a proper sanctions motion, such sanctions might, indeed, be warranted. "Rule 11 mandates sanctions where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance for success; and (3) no reasonable argument has been advanced to extend modify or reverse the law as it stands." *International Shipping Co. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.) (footnote omitted), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). *See also Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985). The reasonable-inquiry standard is more rigorous than the previous standard of subjective good faith. *Eastway,* 762 F.2d at 253. A court considering a motion for sanctions must, therefore, "focus on counsel's conduct at the time of the submission in deciding if a reasonable inquiry has been made." *Id.*

■ The issue of whether the actions of attorneys on behalf of their clients in connection with pending litigation may not be so settled as to warrant the imposition of sanctions on D'Orange's counsel. The only Second Circuit law that Defendants offer to support their position is a single district court decision. However, there is very little room for doubt that had Plaintiff's counsel conducted any remotely reasonable inquiry regarding the RICO "pattern" requirement as interpreted in the Second Circuit, this action would never have been filed against the Crudo Defendants in a federal court. Thus, on a proper Rule 11 motion, sanctions would indeed be merited.

## CONCLUSION

For all of the above reasons, Defendants' motion to dismiss the Complaint is granted.