**Malvina D'ORANGE, Plaintiff,**

v.

**Charles L. FEELY, Ralph Crudo, and Crudo & Crudo, P.C., Defendants.**

**No. 94 Civ. 4157 (CBM).**

United States District Court,
S.D. New York.

Aug. 4, 1995.

William Dunnegan, by William Dunnegan, New York City, for plaintiff.

Law Office of Frederick H. Cohn by Frederick H. Cohn, New York City, for defendant Charles L. Feely.

*OPINION ON INQUEST*

MOTLEY, District Judge.

## MEMORANDUM OPINION

### I. Background

Plaintiff Malvina D'Orange ("D'Orange") commenced this action on June 6, 1994 claiming damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1994) ("RICO"). This court, therefore, has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (1994).

Defendant Charles L. Feely ("Feely") did not respond to the Complaint in a timely manner. Upon the application of D'Orange, the court entered a default judgement against Feely on July 29, 1994 and referred the matter to a magistrate judge for a determination of the amount of damages. Feely subsequently filed a motion to vacate the default. D'Orange opposed this application. The court heard oral argument on September 30, 1994. By an order of that same date, the court denied Feely's motion.

The court held an inquest on June 29, 1995 to determine the amount of damages to which D'Orange is entitled to recover from Feely. Defendant Feely chose not to appear for this hearing. Instead, Feely's counsel represented that Feely was in Pennsylvania since the originally scheduled date had been changed and requested an adjournment. The requested adjournment was denied. After hearing testimony from the elderly and infirmed D'Orange and receiving in evidence Plaintiff's Exhibits 1 through 8, the court granted Feely an adjournment until the following day, June 30, 1995 at 3:00 p.m.

On June 30, 1995 at 3:00 p.m., Feely again chose not to appear. Counsel for Feely represented to the court that he had spoken with Feely since the previous day's proceedings and reminded Feely of his obligation to appear before this court. Feely, who is still a licensed attorney in New York, was not engaged in any other court appearance and had no medical reason for failing to attend the adjourned inquest. While concluding that Feely thus had no valid excuse, the

court nevertheless received in evidence through Feely's counsel Defendant's Exhibits A, B, E, F, G, J and L.

Based upon the default judgement entered against Feely on July 29, 1994 and the evidence presented at the inquest held on June 29–30, 1995, the court makes the following findings of fact and conclusions of law:

## II.  Findings of Fact.[1]

1.  Feely embezzled funds from Plaintiff in two ways. First, before the death of Clarette Otalera ("Otalera"), D'Orange's sister, Feely embezzled funds that Otalera had entrusted to him pursuant to a power of attorney. Second, Feely embezzled funds that the Plaintiff D'Orange entrusted to him by writing checks to himself and his associates from these funds. The amount that Feely embezzled in each of these ways is discussed below.

### A.  Embezzlement Under the Power of Attorney.

2.  The amount that Feely embezzled under the power of attorney of Otalera can be calculated by subtracting (i) the amount Feely accounted for from (ii) the amount Otalera entrusted to him.

3.  Feely's own accounting which he submitted to the Surrogate's Court of the County of Queens demonstrates that he accounted for only $17,641 as of the date Otalera died, November 24, 1989. (Pl.'s Ex. 7 at 1.)

4.  Feely has represented to the Departmental Disciplinary Committee for the First Department that Otalera entrusted to him only $70,740. (Pl.'s Ex. 4 at 5 (letter of Charles L. Feely).) However, the court cannot accept this representation as true. While Feely has control over all of the evidence concerning his embezzlement, he has provided no corroboration with respect to the claimed amount of $70,740. Indeed, the available evidence described below contradicts Feely's bald assertion.

5.  The account statements for the trust account in which Feely was holding Otalera's funds contained $284,811 as of May 7, 1990, on or about the date on which Feely was appointed executor of the Otalera estate. (Pl.'s Ex. 6 at 5.) Feely argues that some of this money in the trust account belonged to others. However, D'Orange has asked Feely to account for the amount in the trust fund since at least May 6, 1994, when Feely was deposed in a State court proceeding. Feely stated in his deposition that he did not know if he had a document explaining whose moneys were in the trust account. (Pl.'s Ex. 1 at 169–71.) In the intervening year, Feely has failed to provide any evidence concerning the identity of any person other than Otalera who provided the money held in the trust account. If Feely had any such evidence, he could have provided it, instructed his attorney to provide it, or offered some explanation as to why he could not provide it. He did none of these things. Accordingly, the court finds that before her death Otalera has entrusted Feely with $284,811 pursuant to the power of attorney.

6.  Subtracting the amount Feely accounted for from the amount Otalera entrusted him with, the court finds that as of May 8, 1990, Feely had embezzled $267,170 pursuant to the power of attorney of Otalera.

7.  Interest on that amount for five years at six percent represents $90,363. Thus, including interest, the amount of Feely's embezzlement under the power of attorney was $357,533.

### B.  Embezzlement as Attorney/Executor of the Otalera Estate.

8.  D'Orange was the beneficiary of her sister's estate. While he was an attorney and the executor of the Otalera Estate, Feely wrote unauthorized checks to himself and his associates in the amount of $76,986. (Pl.'s Ex. 3.)

9.  Interest on that amount at six percent represents $19,342. Thus, including interest, the amount of Feely's embezzlement as an attorney/executor was $96,328.

---

1.  A more complete discussion of the factual background of this case is set forth in this court's opinion on the motion of Defendants Ralph Crudo and Crudo & Crudo, P.C. to dismiss the complaint. *See D'Orange v. Feely,* 877 F.Supp. 152 (S.D.N.Y.1995). The reader's familiarity with that background is presumed.

### III. Conclusions of Law.

■ As a result of Feely's default, the court accepts as true all of the well pled allegations of the complaint, except those relating to damages. *See Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981). D'Orange has pled adequately that Feely violated provisions of RICO, specifically 18 U.S.C. § 1962(b)–(c) (1994). D'Orange, therefore, has prevailed on the merits of her RICO claims against Feely and is entitled under 18 U.S.C. § 1964(c) to recover threefold the damages she sustained in her business or property by reason of the pattern of racketeering activity by Feely alleged in the complaint.

■ To establish a cause of action under RICO, a plaintiff must allege seven distinct elements:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.[2]

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

The acts that can serve to fulfill the second element of a RICO cause of action are set forth in 18 U.S.C. § 1961(1) (1994). As alleged, Feely's predicate acts of racketeering activity consisted of approximately 30 acts of mail fraud in violation of 18 U.S.C. § 1341 (1994). A "scheme or artifice to defraud" includes a scheme of embezzlement. In *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Supreme Court upheld the mail and wire fraud conviction of a reporter for the Wall Street Journal who misappropriated confidential information from the "Heard on the Street" column. With regard to the concept of fraud, the Court stated that it "includes the act of embezzlement, which is ' "the fraudulent appropriation to one's own use of the money or good entrusted to one's care by

another." ' " *Id.* at 27, 108 S.Ct. at 321. *See also United States v. Altman,* 48 F.3d 96, 101 (2d Cir.1995) (same). In the instant matter, the acts of mail fraud consisted of Feely's embezzling funds entrusted to him by D'Orange or Otalera and covering up those acts of misappropriation by mailing D'Orange periodic checks from on or about July, 1990 through February, 1993 that did not disclose Feely's actual distribution of the funds, despite his fiduciary duty to make such a disclosure. *See* Pl.'s Ex. 2.

■ According to the Supreme Court, to establish a "pattern" of racketeering, a plaintiff must show predicate acts that, first, are related to each other, and, second, "constitute a threat of[ ] *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (emphasis in original). Explaining the second requirement further, the Court noted that " '[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. *See also United States v. Kaplan,* 886 F.2d 536, 542–43 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990); *Beauford v. Helmsley,* 865 F.2d 1386, 1391 (2d Cir.) (en banc), *vacated and remanded for further consideration in light of H.J., Inc.,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *original decision adhered to,* 893 F.2d 1433 (2d Cir.), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). With regard to closed-ended continuity, the Court expounded that it can be demonstrated "by proving a series of related predicates extending over a substantial period of time." *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902. While specifically declining to define a precise rule, the *H.J.* Court stated that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* at 242, 109 S.Ct. at 2902.

Courts in the Second Circuit have endeavored to define a minimum range of time

---

**2.** Additionally, Plaintiff must allege that she was "injured in [her] business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c).

needed to show close-ended continuity. In *Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993), the court stated that "[t]hough there is no bright line test for determining precisely what period of time is 'substantial' for purposes of finding the continuity necessary to establish a RICO pattern, .... [p]eriods of 19 or 20 months, however, have been held sufficient...." In *Continental Realty Corp. v. J.C. Penney Co.,* 729 F.Supp. 1452, 1454–55 (S.D.N.Y.1990), the court held that a period of over one year was insufficient to demonstrate close-ended continuity. *See also In re American Express Co. Shareholder Litig.,* 840 F.Supp. 260, 265–66 (S.D.N.Y.1993) (holding period of slightly under one year insufficient), *aff'd,* 39 F.3d 395 (1994). In the case of Feely's scheme against D'Orange, the acts of mail fraud constitute a pattern under RICO because of their relationship and similarity to one another and their continuity over a period of more than two and one-half years.

 The damages that D'Orange has sustained as a result of this pattern of racketeering activity are at least equal to the damages that result from the sum of the predicate acts of mail fraud. *Cf. Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990) (holding that to have standing under RICO plaintiff must demonstrate an injury "caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts"); *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1344 (2d Cir.1994) (citing *Hecht*). Since the mail fraud in this case was perpetrated to cover up a scheme of embezzlement, D'Orange's damages are measured by the amounts embezzled by Feely.

As set forth in the above-stated Findings of Fact, Feely perpetrated two schemes of embezzlement. With regard to both of these schemes, the long period of time it has taken to hold Feely to account argues clearly for an award of prejudgment interest. *See Abou–Khadra v. Mahshie,* 4 F.3d 1071, 1084 (2d Cir.1993) ("Since the RICO statute does not contain any provisions concerning the award of prejudgment interest, the district court ha[s] discretion as to whether to award such

interest."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). First, Feely misappropriated $357,533, inclusive of interest, from funds entrusted to him by Otalera pursuant to a power of attorney. Second, during his tenure as executor of the Otalera estate, Feely embezzled $96,328, inclusive of interest, of estate funds that were rightfully due to D'Orange. Since 18 U.S.C. § 1964(c) requires an award of treble damages, the awarded amounts must be increased respectively to $1,072,599 for the first scheme and $288,984 for the second.

Finally, D'Orange is also entitled to an award of costs, including a reasonable attorney's fee. After the entry of judgement, D'Orange should make a separate motion for such an award. Judgement shall not be delayed while the amount of the attorney's fees is resolved.

### CONCLUSION

For all of the above reasons, the Clerk of the Court shall forthwith enter judgment in favor of Plaintiff Malvina D'Orange and against Defendant Charles L. Feely in the amounts of $1,072,599 for Feely's misconduct pursuant to the power of attorney and $288,984 for Feely's misconduct after his appointment as executor of the Otalera estate.