Diamantis GIANNACOPOLOUS, Plaintiff,

v.

CREDIT SUISSE and Robert Menasche, Defendants.

No. 96 Civ. 9062(CBM).

United States District Court, S.D. New York.

June 4, 1997.

*MEMORANDUM OPINION*

MOTLEY, District Judge.

Defendants in this case have moved to dismiss plaintiff's only federal cause of action against them, a violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961 *et seq.,* pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons provided below, this motion is granted. Plaintiff is also given ten days to amend his complaint so as to properly plead a diversity action.

**BACKGROUND**

Plaintiff Diamantis Giannacopolous is a financier who resides in Greece. Defendant Credit Suisse is a bank existing under the laws of the state of New York, and defendant Robert Menasche was at all relevant times a vice-president of defendant Credit–Suisse. Plaintiff alleges that on November 30, 1992, defendant Menasche, acting in his capacity as an officer of defendant Credit Suisse, fraudulently represented to plaintiff that a third company, Way Refining–Ergis Intercambio Commercial y Industrial Oil Division ("Way Refining"), was a substantial client of defendant Credit Suisse and a profitable company. Plaintiff alleges that he relied on this information in underwriting $300,000 performance bond for Way Refining and that when that company breached its contract, he was forced to pay this amount. Plaintiff further alleges that on February 19, 1993, defendants communicated with a third party, Federal Plaza International Ltd., to seek a fee of $25,000 for providing the misleading information. Plaintiff claims that these allegations are enough to support claims under both RICO and a number of state law torts.

**DISCUSSION**

**I. Applicable Standard on Motion to Dismiss**

A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, when passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

**II. RICO**

**A. Seven Elements**

In order to state a claim under RICO, a plaintiff must establish seven elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering (5) directly or indirectly invests in, maintains an interest in or participates in (6) an enterprise (7) the activities of which affect interstate com-

merce. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Defendants argue that plaintiff has failed to allege facts sufficient to satisfy the third element.

## B. Pattern of Racketeering Activity

The issue of what constitutes a "pattern of racketeering activity" was thoroughly addressed by the Supreme Court in the case of *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In that case, the Court indicated that a "pattern" consists of two or more acts which are both related and continuous.

To be related, the predicate acts alleged must have "the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901. In this case, there is no dispute that the alleged predicate acts, which are the sending of the November 30 letter fraudulently inducing plaintiff to underwrite a bond and the February 13 request for payment for having sent the letter, are related.

Continuity, the second constituent of the term "pattern", is a great deal more complex. In the words of the Court:

"Continuity" is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear to one another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before conti-

nuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*Id.* at 242, 109 S.Ct. at 2902 (citations omitted, emphasis in original). *See also GICC Capital Corp. v. Technology Finance Group*, 67 F.3d 463, 465–66 (2d Cir.1995).

Thus, there are two types of continuity, one of which must be established before a pattern of racketeering activity can be found: closed-ended continuity, in which the predicate acts occur over a substantial period of time, and open-ended continuity, where the acts do not necessarily occur over such a substantial period of time but nonetheless carry with them a threat of future criminal conduct. Each will be examined in turn.

### 1. Closed–Ended Continuity

There is no absolute minimum time period which must pass before closed-ended continuity may be found. However, since the Court's decision in *H.J. Inc.*, where it was held that in order for the allegations to support a finding of closed-ended continuity, the conduct in question must have persisted "over a substantial period of time" and that more than "a few weeks or months" must pass, *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902, the Second Circuit has found closed-ended continuity only twice, and in both cases, the alleged predicate acts took place over a period of years. *See Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989) (predicate acts occurred over an eight year period); *Metromedia v. Fugazy*, 983 F.2d 350, 368–69 (2d Cir.1992) (predicate acts were perpetrated over two years).

In addition to the length of time over which the acts took place, a court must examine a number of nondispositive factors, including "the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *Id.* at 467; *Continental Realty Corp. v. J.C. Penney Co.*, 729 F.Supp. 1452, 1454–55 (S.D.N.Y.1990); *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F.Supp. 926, 948 (S.D.N.Y.1989). Thus, if the predicate acts are perpetrated against "a single victim as part of a single criminal scheme that resulted

in a single injury" over a mere five month span, closed-ended continuity has not been alleged. *D'Orange v. Feely,* 877 F.Supp. 152, 157–58 (S.D.N.Y.1995). On the other hand, if a number of limited partnerships over a ten to fifteen month period sell interests in their partnerships by committing mail and wire fraud, insurance fraud, and securities fraud, then closed-ended continuity is established. *Pahmer v. Greenberg,* 926 F.Supp. 287, 301 (E.D.N.Y.1996).

It is difficult to argue that the allegations in this case support a finding of closed-ended continuity. The predicate acts alleged occurred over a three month period. Moreover, they involved a single perpetrator, defendant Menasche, a single victim, plaintiff, and a single, discrete scheme to induce plaintiff to guarantee a performance bond by fraudulently indicating that the company for which the bond was executed was in a financially sound condition. In fact, plaintiff does not even appear to seriously contest that closed-ended continuity cannot be established on the facts as they are alleged, but rather focusses his effort on demonstrating the existence of open-ended continuity, to which the court now directs its attention.

## 2. Open–Ended Continuity

■ In order to determine whether open-ended continuity exists, Second Circuit cases look either to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed. *GICC,* 67 F.3d at 466; *United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995); *United States v. Kaplan,* 886 F.2d 536, 542 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990); *Beauford v. Helmsley,* 865 F.2d 1386, 1391 (2d Cir.) (en banc), *vacated and remanded,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *adhered to on remand,* 893 F.2d 1433, *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). Thus, "in cases where the act of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the req-

uisite threat of continuity was adequately established by the nature of the activity. . . ." *Aulicino,* 44 F.3d at 1111.

However, when the nature of the conduct or enterprise are not inherently unlawful, courts must look to other external factors that would show the requisite threat of continuity. *Kaplan,* 886 F.2d at 542–43; *GICC,* 67 F.3d at 466. For example, open-ended continuity can be established for defendants who are engaged in a one-time mailing of 8,000 copies of fraudulent documents in connection with a condominium conversion plan when there is an indication that a similar mailing might occur in the future. *Beauford,* 865 F.2d at 1392. Similarly, a series of fraudulent sales of securities over at least one year, coupled with an apparent attempt to continue to sell securities in the future, establishes a threat of continuity. *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521 (2d Cir.1994).

It is clear that banking is not an inherently unlawful enterprise, nor is issuing a letter of credit an activity which is by its very nature unlawful. Plaintiff claims, however, that there are external factors which establish the existence of a threat of future continuity which, when taken into account, are sufficient to establish open-ended continuity. According to plaintiff, because a bank is an institution upon which investors rely heavily, it should be liable under RICO whenever it issues fraudulent letters of credit. Thus, according to plaintiff, the mere fact that defendant is a bank is enough of an external factor to establish a threat of continuity. Plaintiff further argues that he may be able to establish more factors which demonstrate a threat of continuity if he were given an opportunity to conduct discovery.

Plaintiff's argument is without merit. The external facts which establish a threat of continuity are those which belie a characterization of the defendant's acts as isolated or sporadic. *United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.1989) (en banc); *Kaplan,* 886 F.2d at 543. The fact that a bank is generally considered a trustworthy institution and that investors tend to rely upon banks by no means indicates that the act which is alleged in the complaint is any-

thing but an isolated garden variety fraud which the "pattern" requirement was designed to exclude from RICO. *Indelicato,* 865 F.2d at 1383; *In re Integrated Resources Real Estate,* 850 F.Supp. 1105, 1146 (S.D.N.Y.1993). *See also Cucina Classica v. Banca Nazionale Del Lavoro,* 1997 WL 2516, *5 (S.D.N.Y.) (dismissing RICO claim against a bank on the grounds that the predicate acts occurred over only two months and that there were no external factors which established a threat of future continuity).

Plaintiff's argument that he should be entitled to further discovery in order to establish the threat of continuity is bizarre. If plaintiff's argument were to succeed, every case in which an isolated or sporadic fraud was alleged would have to proceed to discovery under RICO, since it is always possible that further discovery will show that there is a threat that alleged racketeering activity will continue in the future. The mere fact that such cases are dismissed routinely demonstrates that plaintiff's argument that he is entitled to conduct a "fishing expedition" in the absence of any evidence that there has been a pattern of racketeering activity is unfounded in the law. *See GICC,* 67 F.3d at 464–69 (affirming district court's dismissal of a RICO action because the allegations were not sufficient to establish continuity); *Cucina Classica,* 1997 WL at *4–7 (dismissing RICO claim on pleadings alone); *D'Orange,* 877 F.Supp. at 156–60 (same).

### III. Pendent State Law Claims

In the absence of a federal claim, this court may decline to exercise jurisdiction over the pendent state law claims and dismiss the case. 28 U.S.C. § 1367(c) (West 1997). However, plaintiff urges this court not to dismiss these claims because of the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332 (West 1997). Unfortunately, the complaint does not make it clear that diversity jurisdiction is applicable since the allegations are that plaintiff is a "resident" of Greece but does not indicate that he is a Greek citizen, as would be required in order for § 1332 to apply. Moreover, defendant Menasche's citizenship is unclear from the complaint. Rather than dismiss the pendent claims, however, which may only result in a refiling of the case on the grounds of diversity, the court directs plaintiff within ten days of the date of the filing of this opinion to amend his complaint so as to plead properly a diversity case. Defendant will then be given ten days to answer or otherwise move with respect to the amended complaint.

### CONCLUSION

For the reasons stated above, plaintiff's claim under RICO is dismissed and plaintiff is given ten days to amend his complaint so as to properly invoke diversity jurisdiction. Defendant is given ten days to answer or otherwise move with respect to the amended complaint.